[Cite as *Perdue v. Jamison*, 2019-Ohio-4597.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| FREDERICK PERDUE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28324 |
| | : | |
| v. | : | Trial Court Case No. 2018-CVG-1160 |
| | : | |
| KAREN JAMISON | : | (Civil Appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of November, 2019.

. . . . . . . . . . .

D. ANDREW HEYMAN, Atty. Reg. No. 0079317 and MATTHEW FABER, Atty. Reg. No. 0088111, 1212 Sycamore Street, Suite 32, Cincinnati, Ohio 45202
 Attorneys for Plaintiff-Appellant

MICHAEL W. SANDNER, Atty. Reg. No. 0064107, 2700 Stratacache Tower, 40 North Main Street, Dayton, Ohio 45402
 Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Frederick Perdue appeals from the February 19, 2019 judgment of the

Montgomery County Municipal Court, Western Division. Following a bench trial on his complaint against Karen S. Jamison for forfeiture of interest in a land contract, the municipal court determined that Perdue was not entitled to enforce forfeiture of the land contract. The judgment of the trial court is reversed; Jamison has forfeited her rights under the land contract. The matter will be remanded for further proceedings.

{¶ 2} Perdue filed his complaint for forfeiture, forcible entry and detainer, and money judgment on August 23, 2018. In Count I, his claim for forfeiture, he alleged that he held title to property located on Gardendale Drive in Dayton, and that Jamison had agreed to purchase the property for $48,000 by means of a land installment contract. A copy of the parties' land contract, dated April 1, 2017, was attached to the complaint. Perdue alleged that on June 19, 2018, he delivered to Jamison "a Notice of Forfeiture and opportunity to cure the default" pursuant to R.C. 5313.05, a copy of which was also attached to the complaint. He alleged that Jamison had failed to cure the default and therefore forfeited her interest in the property, entitling him to possession. In Count II, his claim for forcible entry and detainer, Perdue alleged that Jamison had failed to vacate the property. Perdue alleged that Jamison owed and was past due on land installment contract payments/rent, utilities, real estate taxes, and other fees in the amount of $1,848.54 as of August 31, 2018.

{¶ 3} On September 13, 2018, Perdue filed an amended complaint, to which he attached a land contract between the parties dated January 2, 2018.

{¶ 4} On September 20, 2018, Jamison filed an answer and counterclaim. In her counterclaim, Jamison asserted that she timely had tendered payments to Perdue at his Shroyer Road address, and that he, "without justification," had "refused to accept

payments, marking her envelopes 'return to sender.' "   Jamison asserted that, as a result of the Perdue's "unlawful conduct," she had "initiated a rent escrow case in the Montgomery County Municipal Court" and had deposited the payments that Perdue refused to accept.   Jamison asserted that Perdue's complaint was for "an ulterior purpose solely to harm [her] credit and harass [her]" as the result of his frustration with the party's settlement, "which was memorialized on the record in this Court on October 26, 2017."   Jamison further asserted that Perdue had failed to provide her with a statement showing the amount credited to principal and interest and the balance due, pursuant to R.C. 5313.03.   Jamison asserted that Perdue had never inquired as to the status of tax or utility payments or provided her any evidence of the amount of real estate taxes due before serving the notice to vacate.   Finally, Jamison asserted that Perdue's action was retaliatory and an abuse of process.   Jamison sought $1,000 for damage to her credit, along with reasonable attorney fees.   Perdue responded to Jamison's counterclaim on October 15, 2018.

{¶ 5} On November 8, 2018, Perdue filed a motion for summary judgment on his first cause of action.   Perdue asserted that he was entitled to summary judgment on restitution of the premises.   He asserted that, while he sought to evict Jamison "for several breaches of the land contract (rent, insurance, utilities, etc.)," her "failure to pay the real estate taxes alone" was a sufficient basis for granting restitution of the premises. Perdue attached to the motion Jamison's responses to his requests for admissions, wherein Jamison admitted that she was obligated to pay real estate taxes on the property and maintain liability insurance for her and Perdue's benefit; Jamison further admitted that the real estate taxes for the property were not current as of June 19, 2018, and when

the complaint was filed.

{¶ 6} On December 3, 2018, Jamison filed a memorandum in opposition to the motion for summary judgment, to which she attached an affidavit.   Jamison asserted that there was no dispute that, under Section 3 of the land contract, she was responsible for payment of the real estate taxes.   But she asserted that there were genuine issues of material fact whether she was properly served pursuant to R.C. 5313.06, whether Perdue ever notified her of the real estate taxes, and whether she "defaulted under Section 3" of the land contract.   Finally, Jamison asserted that even if "untimely payment of real estate taxes was considered a default by this Court," it should not be grounds for a forfeiture "when the default is inconsequential or a minor default."

{¶ 7} In her affidavit, Jamison asserted that she did not receive an invoice, statement, or notice from Perdue regarding the taxes prior to receiving the eviction notice. Jamison attached a copy of an invoice from the Montgomery County Treasurer's Office for the first half of 2018, in Perdue's name and listing the Shroyer Road address; the due date on the invoice was February 15, 2019.   Jamison averred that she had "never owned property before, and she expected [Perdue] to notify her of any tax obligations incurred," and that after consulting with counsel, she "took it upon herself to determine the amount of the tax obligations."   She attached a receipt from the Montgomery County Treasurer's Office reflecting payment of $500 toward real estate taxes on September 6, 2018. Jamison also attached a tax summary for the property reflecting the September 6, 2018 payment and an additional payment of $230.45 on September 14, 2018.

{¶ 8} Jamison further averred that, on June 21, 2018, a "Notice of Payment Past Due" was taped to her door, dated June 19, 2018; the notice reflected that $649.14 in

taxes was past due. The notice included language "on the same page titled 'Notice to Leave the Premises.' " Finally, Jamison averred that, as of the date of her affidavit, there were are no taxes owed on the property until February 15, 2019.

{¶ 9} On December 6, 2018, Perdue filed a response in support of his motion for summary judgment. Perdue asserted that he sought summary judgment "on the grounds that [Jamison] failed to cure her breach of the land contract, specifically the requirement to pay the real estate taxes." He also asserted that the land contract did not require him to provide statements or invoices to Jamison regarding the taxes. Perdue asserted that, pursuant to Section 8 of the land contract, he was "required to give [Jamison] a notice of default," whereupon she had 14 days to cure the default, and that he did so. Perdue argued that the amounts due for real estate taxes were public record and available to be viewed on the county auditor's webpage. Perdue asserted that the notice to Jamison "sufficiently identifie[d]" her failure to pay the real estate taxes, which were the only taxes she was required to pay under the land contract. Finally, Perdue asserted that the real estate taxes were not paid until September 2018.

{¶ 10} On December 13, 2018, the municipal court issued an entry that stated: "Defendant has paid the taxes at this time. Motion for Summary Judgment is denied and trial * * * shall proceed." Trial commenced on February 12, 2019. At the start thereof, the court indicated that "the rent escrow case" had been voluntarily dismissed and that trial would proceed on the forceful entry and detainer action.

{¶ 11} Perdue testified that he and Jamison had entered into a land contract on January 2, 2018; he identified Plaintiff's Exhibit A as a copy of the contract. He stated that Jamison had paid less than 20 percent of the purchase price of $45,000. Perdue

identified Plaintiff's Exhibit B as a copy of the June 19, 2018 "Notice of Payment Past Due," and he testified that it gave Jamison until July 3, 2018, to "cure," and then an additional 30 days to pay the entire balance on the land contract. Perdue also testified that he never received proof of general liability insurance from Jamison.

{¶ 12} On cross-examination, Perdue acknowledged that he and Jamison originally entered into a land contract in March or April 2017, and that the original contract was attached to his initial complaint. He acknowledged that the second contract, which was attached to the amended complaint, did not require Jamison to pay utilities. Perdue testified that he received the tax bill, since the property was in his name, and that he did not forward the bill to Jamison. He acknowledged that the taxes were currently paid.

{¶ 13} Regarding the monthly installment payments, Perdue acknowledged that Jamison sent him payments, and that he returned them to her. He identified Defendant's Exhibit 1 as copies of three cashier's checks made out to him for "rent" for the months of May, June, and July, 2018. Perdue testified that they were sent to him by Jamison, he opened the envelopes, observed the checks, and wrote "return to sender on the envelopes."

{¶ 14} Perdue identified Defendant's Exhibit 3 as a State Farm insurance policy in Jamison's name for the Gardendale address, and he testified that the policy was "renter's insurance." He stated: "it's not on her house. It's on her property. It says personal property." Perdue also identified a complaint to forfeit land contract filed by him against Jamison on May 10, 2017, which sought money damages and requested restitution of the premises; he testified that there was a trial on the complaint and that a settlement was reached thereafter.

{¶ 15} During Jamison's testimony on direct examination, the following exchange occurred:

Q. Have you ever owned a house before?

A. No.

Q. And previously * * * did you live in a house with Fred [Perdue] before?

A. Yes. Me and Fred was supposed to be buying * * * * Kingsley together.

Q. And he owned that house, right?

A. Yes.

Q. * * * And so he controlled the taxes of that house?

A. Yes.

Q. So you didn't know - - did you know to go online to pay for any taxes?

A. No. I was told when we started paying the taxes there, Fred controlled everything.

* * *

A. Fred told me - - every two weeks that I got paid I was supposed to go and pay anywhere between 100 and $200 on these taxes. And every week that I got paid, that's how I paid them taxes down. It was because Fred told me to do it every two weeks. When we went into the land contract, we was supposed to have been doing this together. We worked for ten years to do this together. When we first acquired the first house,

which was 1421, okay, I was to take care of the home at [sic] work. Fred was taking care of the realty. We was supposed to get that house, fix it up, and then the next one that we acquired was supposed to go to me, which is [the Gardendale address].

Q. * * * But all of those properties are still in Fred's name, correct?

A. Correct.

THE COURT: Hold on. Hold it. Ma'am, did you just testify you and Fred were in a business relationship of buying houses together?

THE WITNESS: Yes, sir.

* * *

Q. Karen, * * * you were in a personal relationship with Fred, correct?

A. Me and Fred got together in 2000. We became a couple in 2000. One of the things that * * * made me want to be with Fred is because he wanted the same thing I wanted. I wanted to be a homeowner. I wanted it for my grandkids. And he said he wanted the same thing, so I let Fred control me for 15 years. * * * The only reason why I left Fred is because when I had surgery on my knee, this man was across town in Venice, California with another female. I never asked Fred for nothing. I packed my stuff and I walked away from my dream. I walked away.

Q. And that's why you entered into a land contract with him, right?

* * *

A. Yes. Yes.

{¶ 16} Jamison testified that Defendant's Exhibit 3 reflected that she obtained a policy of "liability and property coverage," but on cross-examination, she acknowledged that Perdue was not covered by the policy.

{¶ 17} At the conclusion of the trial, the court stated:

* * * I usually take these under advisement, but I'll tell you what I'm going to do because I think it's important for these two to hear this.   At some point * * * [Perdue] became convinced that [Jamison] hadn't been paying taxes and utilities allegedly, and so he came to her and said I'm not going to accept your rental payments under the land contract or the payments that are due because of that, so he returned it to her.   I think the problem becomes is that this situation has been looked at in terms of a pure contract action, and it's more akin to a divorce.   These two were in a relationship, * * * there was stuff going on underneath the surface here as to what was happening about when these contracts were signed and what was going on between these two.   And we have the unrebutted testimony of the defendant that this was an attempt to control her and to drag her back into this relationship which is not rebutted at this point and, therefore, the Court is going to make a decision that the plaintiff comes to court with unclean hands.   And, therefore, I find that he is not entitled to the relief that he has requested. * * *

{¶ 18} On February 19, 2019, Perdue filed request for findings of fact and conclusions of law, citing Civ.R. 52.[1]

---

[1] Pursuant to Civ.R. 1(C), the Civil Rules of Procedure do not apply "to procedure * * * in

{¶ 19}  Also on February 19, 2019, the municipal court filed a decision and entry which stated:

The Court has carefully considered the evidence admitted at the Trial as well as the Testimony of the witnesses in reaching this Decision.

This is the second case filed by the Plaintiff (hereinafter Perdue) against the Defendant (hereinafter Jamison) over a land contract.   The first case resulted in a settlement in which a new land contract was prepared with the advice of Counsel for both parties.

Perdue sues to foreclose the second Land Contract because Jamison has not paid the real estate taxes in a timely manner; nor has she kept up with the payment of utility bills.   Jamison's unrebutted testimony is that she and Perdue were in an intimate relationship for fifteen (15) years and while in said relationship she provided much of the capital to Perdue to purchase real estate which was supposed to be jointly owned but ended up in Perdue's name. Jamison pointed out that the Land Contract is deficient in the way it outlines the responsibilities [o]f the parties relative to taxes and utilities.   Jamison further offered in unrebutted testimony that Perdue is pursuing the actions he files against her to force her back into a relationship with him.

The Court finds the testimony of Jamison credible and that Perdue's testimony is not credible.   Perdue comes before the Court with unclean

forcible entry and detainer."

hands in an effort to force Jamison into an intimate relationship with Perdue using the Court as a pawn in his game.

Thus, the trial court denied Perdue's claims for forfeiture of the land contract and forcible entry and detainer.

{¶ 20} Perdue asserts the following two assignments of error which we will consider together:

THE TRIAL COURT ERRED IN DENYING PERDUE'S CLAIMS, BECAUSE JAMISON FAILED TO REMEDY ALL OF HER DEFAULTS ON THE LAND CONTRACT.

THE TRIAL COURT ERRED WHEN IT GRANTED JAMISON'S JUDGMENT ON PERDUE'S CLAIMS, BECAUSE JAMISON DID NOT MEET HER BURDEN O[F] PROOF FOR HER DEFENSES.

{¶ 21} In his first assignment of error, Perdue asserts that the land contract was terminated by Jamison's "defaults," which she failed to remedy within the notice period. Specifically, he asserts that Jamison failed to pay the real estate taxes, failed to provide proof of general liability insurance on the property, and failed to pay the outstanding utility bills within the notice period. In his second assignment of error, Perdue asserts that the evidence presented at trial by Jamison, including her testimony regarding prior business dealings with Perdue, was insufficient to meet her burden of proof for her "defense of unclean hands."

{¶ 22} R.C. 5313.01 provides:

(A) "Land installment contract" means an executory agreement which by its terms is not required to be fully performed by one or more of

the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation.

{¶ 23} As noted by this Court:

R.C. Chapter 5313 has been described as " 'essentially a "consumer protection law" ' " * * *. *Howard v. Temple,* 172 Ohio App.3d 21, 2007-Ohio-3074, 872 N.E.2d 1260, ¶ 9 (4th Dist.), quoting *Albright v. Cochran,* 5th Dist. Morrow No. CA-613, 1984 WL 4479, *2 (Mar. 2, 1984). It is "intended to prevent a 'windfall to a vendor who has previously collected substantial sums under a land contract and/or has actually recovered the property.' " *Id.,* quoting *Farkas v. Bernard,* 10th Dist. Franklin No. 95APE10-1365, 1996 WL 257455, *4 (May 16, 1996). As a result, "upon an election of forfeiture, the statutes limit a vendor's remedies." *Id.,* citing *Koehler v. Paniagua,* 3d Dist. Hancock No. 5-02-64, 2003-Ohio-1972, ¶ 9.

*Kossoudji v. Stamps*, 2016-Ohio-7693, 65 N.E.3d 815, ¶ 42 (2d Dist.).

{¶ 24} R.C. 5313.05 governs forfeiture of a vendee's interest under the contract and provides:

When the vendee of a land installment contract defaults in payment, forfeiture of the interest of the vendee under the contract may be enforced only after the expiration of thirty days from the date of the default. A vendee in default may, prior to the expiration of the thirty-day period, avoid

the forfeiture of his interest under the contract by making all payments currently due under the contract and by paying any fees or charges for which he is liable under the contract. If such payments are made within the thirty-day period, forfeiture of the interest of the vendee shall not be enforced.

{¶ 25} R.C. 5313.08 governs when an action for forfeiture and restitution may be brought and provides:

If the contract has been in effect for less than five years, in addition to any other remedies provided by law and after the expiration of the periods prescribed by sections 5313.05 and 5313.06 of the Revised Code, if the vendee is still in default of any payment the vendor may bring an action for forfeiture of the vendee's rights in the land installment contract and for restitution of his property under Chapter 1923. of the Revised Code. When bringing the action under Chapter 1923. of the Revised Code, the vendor complies with the notice requirement of division (A) of section 1923.04 of the Revised Code by serving notice pursuant to section 5313.06 of the Revised Code. The court may also grant any other claim arising out of the contract.

{¶ 26} R.C. 5313.06 governs the initiation of forfeiture and the contents of service and notice as follows:

Following the expiration of the period of time provided in section 5313.05 of the Revised Code, forfeiture of the interest of a vendee in default under a land installment contract shall be initiated by the vendor * * *, by

serving or causing to be served on the vendee * * * a written notice which:

> (A) Reasonably identifies the contract and describes the property covered by it.

> (B) Specifies the terms and conditions of the contract which have not been complied with.

> (C) Notifies the vendee that the contract will stand forfeited unless the vendee performs the terms and conditions of the contract within ten days of the completed service of notice and notifies the vendee to leave the premises.

> Such notice shall be served by the vendor * * * by handing a written copy of the notice to the vendee * * *, or by leaving it at his usual place of abode or at the property which is the subject of the contract or by registered or certified mail by mailing to the last known address of the vendee * * *.

{¶ 27} "R.C. 5313.05 and 5313.06 create a statutory right to forfeiture when certain conditions are met. In order to ascertain when a vendor may enforce forfeiture, the statutes must be read *in pari materia*, and effect must be given to both." *Keene v. Schnetz*, 13 Ohio App.3d 87, 89, 468 N.E.2d 125 (6th Dist.1997).

{¶ 28} Plaintiff's Exhibit A, the January 2, 2018 Land Contract admitted at trial, identifies Perdue as the Vendor and Jamison as the Vendee. It provides in relevant part as follows:

> 1. CONTRACT PRICE. METHOD OF PAYMENT, INTEREST RATE:
> In consideration whereof, the Vendee agrees to purchase the above described property for the sum of FORTY-FIVE THOUSAND DOLLARS * * * payable as follows:
>
> The sum of THREE THOUSAND DOLLARS * * * as a deposit on or before

April 1, 2019, together with the unpaid balance payable in consecutive monthly installments of THREE HUNDRED AND FIFTY Dollars beginning November 1, 2017, thereafter until said balance is paid in full, * * *
Payments shall be made to the Vendor by U.S. mail at the location above, unless otherwise directed by the Vendor, and such payments shall be credited first to the Interest, and the remainder to the principal and other sums due. * * *

* * *

3.   REAL ESTATE TAXES:

For the duration of this Agreement, the Purchaser will be responsible for all taxes, and assessments levied against the premises.

4.   INSURANCE AND MAINTENANCE:

The vendee is not responsible for insuring the Vendor's contents and furnishings in or about the Premises against either damage or loss and the Vendee assumes no liability for any such damage or loss.
The Vendee is hereby advised and understands that the personal property of the Vendee is not insured by the Vendor for either damage or loss, and the Vendor assumes no responsibility for any such damage or loss.   The Vendee is advised that, if insurance coverage is desired by the Vendee, the Vendee should inquire with the Vendee's insurance agent regarding a personal contents policy of insurance.
The Vendee is hereby advised and understands that the Premises is insured by the Vendor for both damage and loss to the structure, mechanical or improvements to the Premises, and the Vendor assumes responsibility for any such damage or loss.   Any premiums paid by the Seller for the insurance on the Premises are payable to the Vendor by the Vendee within 30 days of the Vendor furnishing receipts evidencing such insurance to the Vendee.
The Vendee is responsible for maintaining liability insurance on the Premises for the benefit of both the Vendee and the Vendor, and the Purchaser assumes liability for any damage or loss arising from the liability of either the Vendee or the Vendor.
For any required insurance of the Vendee stipulated in this contract, the proof of insurance will be furnished to the Vendor upon renewal of such insurance within two weeks of renewal.

* * *

8. DEFAULT:

In the event of the Vendee's failure to perform any covenant or condition

contained in this Agreement, the Vendor will give the Vendee a notice of default.   The notice will give the Vendee 14 days from the date the notice is received to remedy the default.   If the Vendee fails to remedy the default within 14 days, then the entire balance of the Vendee Price, including interest payable, will become due 30 days after the 14 day period to remedy the default expires (the "Notice Period").   Failure to pay the full amount of the Purchase Price owing will result in the termination of this Agreement at the end of the Notice Period.

The Vendee and the Vendor agree that in the event that the Vendee fails to remedy a default and this Agreement is terminated, the Vendee will vacate the Premises within 15 days of the Agreement termination.   The Vendee and the Vendor further agree that failure of the Vendee to vacate within that period gives the Vendor a right to maintain an action to obtain vacant possession of the Premises.

In the event of default and termination of this Agreement by the Vendee, the Vendee forfeits any and all payments made under the terms of this Agreement, including but not limited to all payments made towards the Purchase Price, and any and all taxes, assessments, or insurance premiums paid by the Vendee, as liquidated damages for breach of this Agreement.

**{¶ 29}** Plaintiff's Exhibit B, all of which is on one page, provides:

Notice of Payment Past Due

(14 Day Notice – Land Contract)

DATE <u>06/19/2018</u>

RESIDENT <u>Karen S. Jamison</u>

ADDRESS * * * <u>* Gardendale Drive, Dayton, Ohio 45417</u>

DATE PAYMENT DUE <u>07/01/2018</u> RENT AMOUNT DUE: <u>$1,050.00 (May,</u>

<u>June and July)</u>

LATE   CHARGES:   <u>$0.00</u>   TAXES   <u>$649.14</u>   UTILITIES   <u>$149.60</u>

APPROXIMATE TOTAL <u>$1,498.54</u>

YOU ARE ALSO REQUIRED TO PROVIDE PROOF OF LIABILITY

INSURANCE

According to our records, your payment is past due and you have failed to

provide proof of liability insurance.   We cannot make our payments for the mortgage, taxes, etc. unless we collect our payments when due.   We hope this failure to pay on time is simply an oversight.   In this event, YOU HAVE 14 DAYS TO PAY THE PAST DUE PAYMENT AND PROVIDE PROOF OF INSURANCE.

Occasionally, a resident fails to pay because of financial difficulties.   We cannot furnish free housing without getting in financial difficulties ourselves. If you are unable to make your payment, we must ask you to move.   If you have not paid within the 14-day period, we will have to file a court suit to have your possessions removed from the property.   Once this suit is filed, you will not only be required to pay the amount past due, but you will also be required to pay the court costs.

It is always to the resident's benefit to pay before the notice is filed in court. The filing could affect your credit rating as well as be detrimental to you in your effort to rent or buy other premises.   Should you move out without paying all the amounts due, the court will grant a judgment against you.

The following is a legal notice, which under the state law, must accompany

this letter.

IMMEDIATE PAYMENT OF THE FULL AMOUNT DUE WILL VOID THIS

NOTICE._____

### NOTICE TO LEAVE PREMISES

TO Karen S. Jamison, et al. and all occupants or tenant(s)

You are hereby notified that I (we) want you, on or before August 20, 2018, to leave the premises you now occupy and which you have made payments on a land installment contract to us * * *

Grounds:  FAILURE TO MAKE UTILITY PAYMENTS, PROVIDE PROOF OF INSURANCE, PAYMENT OF MAY, JUNE, and JULY RENT ON TIME AND IN FULL, AND TO MAKE TAX PAYMENTS UNDER THE LAND CONTRACT, OF WHICH THE CONTRACT WILL STAND FORFEITED UNLESS YOU MAKE ALL PAYMENTS UNDER SAID CONTRACT AND AT LAW BY JULY 3, 2018 (PER THE NOTICE ABOVE DATED June 19, 2018).

YOU ARE BEING ASKED TO LEAVE THE PREMISES.   IF YOU DO NOT LEAVE, AN EVICTION ACTION MAY BE INITIATED AGAINST YOU.   IF YOU ARE IN DOUBT REGARDNG YOUR LEGAL RIGHTS AND

OBLIGATIONS AS A TENANT, IT IS RECOMMENDED THAT YOU SEEK LEGAL ASSISTANCE.

Frederick Perdue, Property Owner
* * * * Shroyer Road.
Oakwood, OH 45419.

{¶ 30} As this Court has previously noted:

The construction of a written contract is a matter of law for the trial court to determine. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. Because the interpretation of written contracts is a question of law, we review them de novo on appeal. *Sauer v. Crews*, 10th Dist. Franklin No. 12AP-320, 2012-Ohio-6257, ¶ 11.

De novo review requires an "independent review of the trial court's decision without any deference to the trial court's determination." *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft,* 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶ 27 (3d Dist.).

*Discover Bank v. Swartz*, 2016-Ohio-2751, 51 N.E.3d 694, ¶ 12-13.

{¶ 31} First, we note that the land contract is silent as to utilities. Perdue acknowledged at trial that the contract did not require Jamison to pay utilities, and we conclude that Perdue's argument that he was entitled to enforce forfeiture on the basis of unpaid utilities fails.

{¶ 32} As set forth above, the trial court resolved the issue of real estate taxes in Jamison's favor at the summary judgment stage. We conclude, however, that Jamison's non-payment of the taxes was a breach of the land contract. The land contract provided

that the Purchaser "will be responsible for all taxes, and assessments **levied** against the premises." (Emphasis added.) A tax is normally levied on the 20th day of December. It becomes a lien on the property on January 1, being due and payable (in this situation) on the 15th day of February of the following year. Usually it is due and payable around January 15. The tax bills indicate that there was a delinquency, and Jamison admitted in Request for Admission 10 that the real estate taxes for the property were not current as of June 19, 2018. Accordingly, Perdue was entitled to enforce forfeiture on the issue of non-payment of the real estate taxes.

{¶ 33} We further conclude that Perdue was entitled to enforce forfeiture based upon Jamison's failure to provide proof of general liability insurance, as required by Section 4 of the land contract, an issue the trial court did not address. While Jamison obtained a "Renter's Policy," she failed to provide proof of "liability insurance on the Premises for the benefit of both the Vendee and the Vendor" as expressly required by the land contract.

{¶ 34} Perdue's first assignment of error is sustained due to Jamison's non-payment of real estate taxes and failure to obtain general liability insurance on the premises.

{¶ 35} Turning to Perdue's second assignment of error, this Court has previously noted:

> * * * "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy." *Marinaro v. Major Indoor Soccer League,* 81

Ohio App.3d 42, 45, 610 N.E.2d 450 (9th Dist.1991) (citation omitted). This

doctrine does not apply, however, where a party is not attempting to invoke

the equitable powers of the court. *See, e.g., Jamestown Village Condo.*

*Owners Assn. v. Market Media Research, Inc.*, 96 Ohio App.3d 678, 688,

645 N.E.2d 1265 (8th Dist. 1994).

*Reid v. Wallaby's, Inc.*, 2d Dist. Greene No. 2011-CA-36, 2012-Ohio-1437, ¶ 31.

{¶ 36} We note that much of Jamison's testimony regarding Perdue's alleged violation of good faith related to matters that occurred before the January 2, 2018 contract was executed; she testified that she "let Fred control [her] for 15 years." We conclude that the court mischaracterized the record in finding that Jamison "provided much of the capital to Perdue to purchase real estate which was supposed to be jointly owned but ended up in Perdue's name." Jamison testified that she "paid them taxes down" on previous property at Perdue's instruction while they were a couple. The record also does not support the court's conclusion that Perdue attempted to "force Jamison into an intimate relationship with [him]." In her counterclaim, Jamison asserted that Perdue sought to ruin her credit and harass her. Finally, we cannot conclude, as did the trial court, that the issue herein is "more akin to a divorce" than a contract dispute. While Jamison did present evidence that Perdue returned three of her monthly payments, she was in default of the provisions of the land contract requiring her to pay all taxes levied against the premises, as well as to provide liability insurance for her *and Perdue's* benefit. Based upon the foregoing, we cannot conclude that Perdue's recovery of the premises is barred by the doctrine of unclean hands.

{¶ 37} Jamison forfeited the land contract by breaching its terms. The judgment of

the trial court is reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.


Copies sent to:

D. Andrew Heyman
Matthew Faber
Michael W. Sandner
Hon. James D. Piergies