[Cite as *Stiffler v. F.I.O.P. Assocs., L.L.C.*, 2020-Ohio-826.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| THOMAS D. STIFFLER, TRUSTEE, et al. | : | |
| | : | |
| | : | Appellate Case No. 28501 |
| Plaintiffs-Appellees | : | |
| | : | Trial Court Case No. CVG1901283 |
| v. | : | |
| | : | (Civil Appeal from Municipal Court) |
| F.I.O.P. ASSOCIATES, LLC | : | |
| | : | |
| Defendants-Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

GRANT D. KERBER, Atty. Reg. No. 0068474, 215 West Water Street, Troy, Ohio 45373
        Attorney for Plaintiffs-Appellees

MATTHEW C. SORG, Atty. Reg. No. 0062971 and EBONY D. DAVENPORT, Atty. Reg. No. 0098041, 40 North Main Street, Suite 2700, Dayton, Ohio 45423
        Attorneys for Defendants-Appellants

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} F.I.O.P. Associates, LLC (FIOP) appeals from a judgment of the Vandalia Municipal Court in favor of Plaintiffs-Appellees, Thomas and Susan Stiffler, co-trustees, in a forcible entry and detainer action. The issue on appeal is relatively uncomplicated: where the Revised Code requires a buyer to pay 20 percent of the purchase price under a land installment contract before his or her interest vests (thereby requiring foreclosure rather than forfeiture for the seller to reclaim the property), are payments allocable to items other than the principal balance included in the calculation? Because the terms of the contract at issue did not support the inclusion of such items as payment toward the purchase price, the judgment of the trial court will be affirmed.

## I.      Facts and Course of Proceedings

{¶ 2} Thomas and Susan Stiffler are co-trustees of the Thomas D. Stiffler and Susan M. Stiffler Revocable Living Trust, created on June 4, 2014 ("the Trust"). The trust res included real property located at 216 West Wenger Road in Englewood, Ohio. On March 1, 2017, the Trust entered into a land installment contract ("the land contract" or "the contract") to sell this property to an entity known as FIOP.  The sole managing member of FIOP, Anthony Napier, acted on its behalf.

{¶ 3} The land contract set the purchase price at $105,000. Closing costs advanced by FIOP in the amount of $1,189.25 were deducted from this figure, resulting in a balance of $103,810.75. The unpaid principal balance bore interest at a rate of 7.25% per annum, computed monthly.

{¶ 4} Pursuant to the terms of the contract, FIOP was to submit monthly installment payments to the Trust in the amount of $908.83. Of this amount, $708.17 was allocated to principal and interest, and $200.66 was allocated to real estate taxes and property

insurance. The payments were due on the 10th of each month.

{¶ 5} The land contract provided that FIOP's monthly obligation was subject to adjustment if the respective amounts for real estate taxes or property insurance changed. Also relevant, the Trust maintained an adjustable rate mortgage ("ARM") on the subject property. The parties mistakenly believed that FIOP's monthly obligation was subject to adjustment whenever the rate on the Trust's monthly obligation on its own mortgage changed. The land contract contained no such provision. Nonetheless, on the two occasions that the Stifflers notified Napier of an increase in the Trust's ARM, Napier submitted bulk amounts to "get current," and FIOP's monthly payment amount was adjusted to reflect the increased rate.

{¶ 6} Napier submitted monthly payments to the Stifflers from March 2017 to March 2019. Following the more recent of the two ARM increases, FIOP's monthly payment had increased to $1,198. Napier submitted payments reflecting this amount in January, February, and March 2019. He then stopped making payments altogether.

{¶ 7} The default clause of the contract provided, in pertinent part, as follows:

In the event that Buyer shall fail to pay an installment hereunder, (or shall fail to pay the taxes, assessments, or insurance premiums when due), or shall fail to perform any other condition of this Contract and such default shall continue for a period of thirty (30) days, then all amounts remaining unpaid shall immediately at option of the Seller become due and payable, and Seller may terminate this Agreement by giving Buyer ten (10) days written notice in compliance with Ohio Revised Code Section 5313.06. After said ten (10) day period, if Buyer has not remedied such default, the

Contract shall be terminated. Unless Buyer has made payments in accordance with the terms hereof for a period of five (5) years or more from the due date of the first payment, or Buyer has paid at least twenty percent (20%) of the purchase price, all payments made hereunder by the Buyer shall be retained by the Seller as liquidated damages for the nonperformance of this Contract and for the use and occupancy of said premises by Buyer. In addition thereto Seller shall retain all rights under Ohio Revised Code Section 5313.10.

{¶ 8} By written notice dated May 15, 2019, counsel for the Stifflers specified that FIOP was in default under the land contract for failing to submits payments for the months of April and May 2019, and that the Stifflers had elected to terminate the contract. The letter further notified FIOP that it had ten days to cure the default to avoid forfeiture or, if not, to vacate the premises. FIOP did neither.

{¶ 9} On June 24, 2019, the Stifflers filed a complaint seeking restitution of the subject property as well as monetary damages. The matter proceeded to a bench trial on the former cause the following month. On August 1, 2019, the magistrate issued a judgment cancelling the land contract and ordering the property restored to the Trust's possession. The trial court overruled FIOP's objections and adopted the magistrate's decision in an entry dated September 11, 2019. Thereafter, FIOP timely perfected its appeal.

## II.    The Law Governing Land Installment Contracts

{¶ 10} The parties do not dispute that their agreement was a land installment contract. The statutory scheme governing land installment contracts for residential

dwellings is found at Chapter 5313 of the Ohio Revised Code. Particular to these contracts, the "vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." R.C. 5313.01(A). A vendee retains only equitable title to the property until it has performed the entirety of its obligations under the contract and thereby acquired legal title to the property. *Kossoudji v. Stamps*, 2016-Ohio-7693, 65 N.E.3d 815, ¶ 63 (2d Dist.), quoting *Zumbrink v. Hercules*, 2d Dist. Darke No. 1392, 1996 WL 339947, *7 (June 21, 1996).

{¶ 11} If the vendee defaults under the contract and fails to cure within 30 days, the vendor may pursue one of two courses of action to regain possession of the property. *See* R.C. 5313.05. Where the vendee has not yet made payments under the contract for a period of five years, R.C. 5313.08 permits the vendor to bring an action for forfeiture of the vendee's rights and for restitution of the property. *See* R.C. Chapter 1923. However, R.C. 5313.07 provides that a vendee must pursue foreclosure under the following circumstances:

> If the vendee of a land installment contract has paid in accordance with the terms of the contract for a period of five years or more from the date of the first payment *or has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof*, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property as provided in section 2323.07 of the Revised Code.

(Emphasis added.) It is undisputed that FIOP had not yet been paying on its contract with

the Trust for a period of five years. Accordingly, FIOP relies upon the emphasized portion in the above statute to argue that the Trust's sole means of redress in this case was an action for foreclosure rather than forfeiture.

### III.     Construction and Interpretation of R.C. 5313.07

{¶ 12} On appeal, FIOP presents two assignments of error.[1] First, FIOP argues that the trial court erred in sustaining the Trust's forfeiture claim and in concluding that FIOP had not paid 20 percent toward the purchase price under the contract. Specifically, FIOP asserts that the plain meaning of the phrase "total sum equal to or in excess of twenty percent" in R.C. 5313.07 is not limited to payments toward the principal balance.

{¶ 13} There was no dispute that FIOP submitted payments totaling $23,351.29 as of April 2019. FIOP emphasizes the fact that this sum represented more than 20 percent of the $105,000 purchase price. Consequently, it concludes, the plain language of R.C. 5313.07 required the Trust to pursue foreclosure rather than forfeiture. By adopting the Trust's position, FIOP reasons that the trial court effectively inserted language into the statute in derogation of the well-established canons of statutory construction and interpretation.

{¶ 14} To begin, we review the trial court's adoption of the magistrate's judgment in favor of the Trust for an abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 11 (2d Dist.). An abuse of discretion

---

[1] The Table of Contents in FIOP's merit brief purports to offer three assignments of error, the first two of which are identical. (Appellant's Brief at 4). The body of the brief appears to combine the identical assignments and argue just two assignments of error. (*See id.* at 10-11). This is further supported by the recitation of the two distinct assignments of error in both the Table of Contents and the body of FIOP's reply brief. (Appellant's Reply Brief at 2, 4-7). We therefore shall refer to the assignments of error proffered by FIOP as numbering two, not three.

connotes a decision that was arbitrary, unreasonable or unconscionable. *Id.* at ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 15} As alluded to at the outset, the central inquiry in this case concerns whether R.C. 5313.07 contemplates the inclusion of payments submitted by FIOP for items other than principal in calculating the "total sum" paid toward the purchase price. These include amounts allocable to real estate taxes, property insurance, and monies submitted to compensate for increases in the rate on the Trust's ARM. The legislature set forth a number of definitions in R.C. 5313.01, but "purchase price" or "total sum equal to twenty percent or more of the purchase price" are not among them. We thus turn to a case cited by both parties for guidance, *Smith v. Blackburn*, 31 Ohio App.3d 251, 511 N.E.2d 132 (4th Dist.1987).

{¶ 16} In *Blackburn*, the vendors under a land installment contract sought forfeiture after the vendee was late on several payments. The municipal court determined that the buyer had submitted payments exceeding 20 percent of the purchase price in total, thus requiring the vendors to pursue foreclosure and judicial sale. On appeal, the Fourth District Court of Appeals reversed. First, the appellate court reasoned that, "[s]ince the term 'purchase price' is not defined in R.C. Chapter 5313, its meaning may be expressly determined by the parties to the contract or by implication, *i.e.,* using the word's ordinary meaning." (Emphasis in original.) *Id.* at 253. The provisions not having provided to the contrary, the appellate court found that the "purchase price" of the contract was the face amount thereof. *Id.* at paragraph one of the syllabus.

{¶ 17} The *Blackburn* court went on to emphasize that the terms of the contract unambiguously allocated portions of the vendee's monthly payment to principal and

interest, respectively. None of the terms sanctioned the inclusion of payments toward taxes, insurance premiums, or other costs in calculating the percentage paid on the "purchase price." Accordingly, the Fourth District held that

> [u]nless otherwise expressly stated by the contracting parties, the amounts paid by the vendee which are allocable to insurance premiums, real estate taxes, or interest on unpaid principal are not included in the calculation of whether the vendee has paid twenty percent or more of the purchase price under R.C. 5313.07.

*Id.* at paragraph two of the syllabus. *Accord Lindhorst v. Elkadi*, 8th Dist. Cuyahoga No. 1603, 2002-Ohio-2385.

{¶ 18} Napier testified that he understood that "20% of the purchase price" encompassed all of the payments he had ever made, allocation notwithstanding. The contract specified that the "monthly payments shall be applied first against unpaid interest, next against taxes, assessments, and insurance premiums, and next against such repairs as the Seller is required to pay on behalf of the Buyer, and the balance, if any, against the principal." Thus, as in *Blackburn*, the unambiguous terms of the contract did not support FIOP's position that the figures should be lumped together for the "20 percent" calculation. Even if we were to find any ambiguity in the agreement relating thereto, a cardinal rule of contract law is that ambiguities are to be construed against the drafter. *Becker v. Direct Energy, LP*, 2018-Ohio-4134, 112 N.E.3d 978, ¶ 56 (2d Dist.). Napier acknowledged that an attorney prepared the land contact on his behalf.

{¶ 19} Also of note, upon questioning by the magistrate, Napier conceded that a significant portion of the aggregate amount FIOP had paid constituted interest. Ms. Stiffler

produced an amortization schedule at trial which the court accepted into evidence. The schedule detailed the payments received from Napier, amounts allocated to interest and principal, and a running balance. As of March 2019, the remaining balance on the contract was $100,554.47. The difference between the remaining balance of $100,554.47 and the purchase price of $105,000 fell far below 20 percent of the purchase price.

{¶ 20} In accordance with the above, we find that the trial court did not abuse its discretion in concluding that the Trust was entitled to forfeiture of FIOP's equitable interest and restitution of the property. Accordingly, the first assignment of error is overruled.

### IV. FIOP's Breach of the Land Contract

{¶ 21} In its second assignment of error, FIOP argues that the trial court erred in finding that it had breached the land contract as of April 2019. It was undisputed that the Trust had increased FIOP's payments from April 2018 through March 2019 beyond the monthly amount originally agreed upon in the contract. FIOP reasons that the overpayments submitted during this period rendered it current on its monthly obligation as of April 2019.

{¶ 22} At trial, Ms. Stiffler testified that she notified Napier whenever she became aware that adjustments had been made to the real estate taxes, insurance premiums, or interest rate on the Trust's mortgage. Coverage for changes in certain escrowed items was explicitly provided for in the contract, as follows: "Said monthly payment may be adjusted if annual real estate taxes or annual homeowner's insurance change during the term of this Contract." Ms. Stiffler sent Napier verification of such increases, and he paid the difference.

{¶ 23} The propriety of including coverage for increases in the Trust's ARM is not

an issue germane to the disposition of this appeal. Even if attributed to prepayments on principal, it is undisputed that FIOP did not tender any payments for the months of April, May, June, or July 2019. The failure to tender payments required by the plain terms of a contract constitutes a breach of said contract. *See, e.g., Sec. Bank v. Hawk*, 35 Ohio St.3d 1, 3, 517 N.E.2d 886 (1988); *Perdue v. Jamison*, 2d Dist. Montgomery No. 28324, 2019-Ohio-4597, ¶ 32-34, 37.

{¶ 24} Because we find no abuse of discretion in the trial court's conclusion that FIOP breached the land installment contract, the second assignment of error is overruled.

## V. Conclusion

{¶ 25} Having overruled FIOP's two assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Grant D. Kerber
Matthew C. Sorg
Ebony D. Davenport
Hon. Cynthia M. Heck